UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ANTHONY GEORGE,

        Plaintiff,

   -v-                                                                          No.  07 Civ. 2476 (LTS)(GWG)

INTAKE OFFICERS AT DOWNSTATE
WORKING JAN 5, 2005; OFFICER E.
SCOTT; and OFFICER B. ANDERSON,

        Defendants.
-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Plaintiff Anthony George ("George" or "Plaintiff") brings this Section 1983 action pro se against Intake Officers at Downstate Correctional Facility ("Intake Officers"), Officer E. Scott ("Scott"), and Officer B. Anderson ("Anderson") (collectively "Defendants"), alleging that Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

Defendants moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's Amended Complaint ("Am. Compl.") on the grounds that Plaintiff had failed to exhaust his administrative remedies.  By Order dated October 8, 2008, the Court converted Defendants' motion to dismiss to a motion for summary judgment and provided the parties with an opportunity to supplement their submissions.  For the reasons explained below, the Court grants summary judgment in Defendants' favor.

### BACKGROUND

Plaintiff's Allegations

The following facts are taken from Plaintiff's Amended Complaint, unless otherwise noted.  Plaintiff, a former inmate at Downstate Correctional Facility ("Downstate") and

Cayuga Correctional Facility ("Cayuga"), identified an injury to his ankle during the intake procedures at Downstate. (Am. Compl. p. 3.) After noticing a deformity in Plaintiff's right ankle, the intake nurse issued Plaintiff a permit to wear specialized medical boots. (Id.) Plaintiff alleges that, at some point thereafter while he was still at Downstate, Officer Anderson tore up the permit and Officer Scott placed the medical boots in the garbage. (Id.) Plaintiff alleges that, as a result of being forced to walk without the boots, he fell down a flight of stairs and suffered a head injury. (Am. Compl. p. 3.) After Plaintiff was transferred to Cayuga, he suffered two more falls while walking to the mess hall without medical boots, resulting in further injuries to his back, neck, head, and ankle. (Id.) Plaintiff further alleges that he was forced to walk through the snow in an aircast because he did not have the boots. (Id.) According to Plaintiff, he was sent to an outside hospital and to sick call for the pain and eventually an MRI revealed torn tendons in his feet requiring surgery. (Id.) Plaintiff was without the medical boots for three months. (Am. Compl. p. 4.)

Plaintiff acknowledges in the Amended Complaint that both facilities had grievance procedures that covered the subject matter of his claims. Plaintiff indicates that he filed grievances at both Downstate and Cayuga complaining that his medically approved boots were taken from him. (Id.) Plaintiff reports that, identifies as a consequence of filing his grievance(s), he received medical boots after three months. (Id.) Plaintiff does not identify any steps that he took to appeal any decision that he received with respect to those grievances. (Id.)

Procedural History

Plaintiff's original complaint was dismissed, with leave to file an amended complaint, for, inter alia, failure to sufficiently allege facts regarding his medical needs. (See docket entry no. 3.) Plaintiff filed an Amended Complaint and Defendants filed a motion to dismiss. (Docket entry nos. 4; 14.) Plaintiff filed a motion for an extension of time to respond to

Defendants' motion to dismiss, and submitted a notice of his recent change of address. (See docket entry nos. 21; 18; 19.) Plaintiff's motion for an extension of time was granted and copies of the Order were sent to both Plaintiff's old and new addresses. (See docket entry no. 20.) Plaintiff failed to file opposition to Defendants' motion to dismiss by the extended deadline.

Conversion to Summary Judgment

Defendants' motion to dismiss the Amended Complaint on the grounds of failure to exhaust administrative remedies was accompanied by an affidavit (the "Bellamy Affidavit") asserting that Plaintiff only filed a grievance concerning these matters at Cayuga and that he did not appeal the result of that grievance, as well as a copy of the grievance and the responses to it. Because Defendants' motion was based on evidence that was not part of the complaint, Court converted the motion to one for summary judgment, issuing an order on October 8, 2008, that included a Notice to Pro Se Litigant concerning the potential consequences of failing to proffer evidence in response to such a motion and giving both sides additional time to make supplementary submissions. McCoy v. Goord, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003) ("If nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss should be converted, pursuant to Rule 12(b), to one for summary judgment."); see also Villante v. Dep't of Corr. of City of New York, 786 F.2d 516, 521 (2d Cir. 1986) ("[I]f a district court considers matters outside of the pleadings, it must then convert a motion under Rule 12(b)(6) to one for summary judgment and ensure that the opposing party is given proper notice of the conversion.") Plaintiff responded with two letters – one detailing his claims concerning his injuries and providing medical documentation of his injuries and treatments, and one in which he asserted that he had filed a grievance at Downstate, had a hearing at Cayuga, and received the medical boots several weeks later. (See Docket Entry No. 24, Pl's October 19, 2008, letter). Plaintiff provided no grievance

documentation. Defendants made no further submissions.

DISCUSSION

Summary Judgment Standard

Summary judgment is proper if the "admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. The moving party bears the burden of establishing that no genuine issue of material fact exists. Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 256 (1986). When the non-moving party is proceeding pro se, the court should read plaintiff's submissions "liberally and interpret them to raise the strongest argument that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (internal citations and quotations omitted). This is particularly true when evaluating motions for summary judgment. Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment.").

Failure to Exhaust Administrative Remedies Under the PLRA

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a) (West 2003). Administrative complaints such as grievances "must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004). However, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). All that the PLRA

requires is compliance with prison grievance procedures.  Id.  Thus, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim."  Id.  There is no per se rule that officers be specifically named.  Id.

Defendants have proffered evidence of a grievance that Plaintiff initiated during his term at Cayuga, in which he complained that he had been discharged from the Cayuga infirmary on January 24, 2005, asserted that his crutches and medical boots had been "lost or taken" at Downstate and that he was unable to walk to the mess hall, and requested that he be sent back to the infirmary until medical boots could be ordered for him.  (Bellamy Off., Ex. A.)  The grievance does not name or refer to any specific Downstate personnel, and does not specifically allege any wrongful deprivation of the boots and crutches at Downstate or even that he suffered any injuries at Downstate as a result of the deprivation.  It was therefore insufficient to put the grievance system on notice of Plaintiff's claims that Defendants wrongfully deprived him of the boots and that he was injured as a consequence.  Plaintiff's general statements in his Amended Complaint and in his letter to the Court that he filed grievances concerning the boots are not sufficient to raise any genuine issue of fact as to whether he filed a different, more specific grievance.  Defendants are therefore entitled to judgment dismissing the complaint because Plaintiff has not shown that he properly initiated any grievance process concerning the claims that he is bringing in this lawsuit against the Downstate personnel.

The complaint must be dismissed for the additional reason that Plaintiff failed to exhaust all of the stages of the grievance process that he began at Cayuga.  As noted earlier, the grievance requested that he be reassigned to the infirmary until he could be provided with medical boots.  The Inmate Grievance Resolution Committee (the "IRC") responded by saying that it had no authority to override the medical staff's determination (presumably a reference to the decision

to discharge Plaintiff from the infirmary) and recommended that Plaintiff be moved "to a dorm closer to the messhall." (Bellamy Aff., Ex. A.)  Plaintiff appealed the decision to the Superintendent, who denied the appeal.  The grievance documentation does not reflect any further attempts to appeal, and the affidavit submitted by Defendants asserts that Plaintiff never appealed the grievance to the final administrative body – the Central Office Review Committee ("CORC").

Where, as here, a Plaintiff seeks to counter an assertion that his complaint should be dismissed for failure to exhaust all available administrative remedies as required by the PLRA, the Court must engage in a three-part inquiry.  Hemphill v. State of New York, 380 F.3d 680, 686 (2d Cir. 2004).  First, the Court must determine whether such remedies were available to the plaintiff. See Abney v. McGinnis, 380 F.3d 663 (2d Cir. 2004).  Defendants' evidence indicates that the New York Department of Correctional Services ("DOCS") maintains a three-tiered grievance procedure.  7 N.Y.C.R.R. § 701.5.  An inmate must first file a grievance with the IGRC. Following the issuance of a written decision by the IGRC, the inmate may appeal to the Superintendent of the facility, who must provide "simple directions" on how to further appeal to the next and final level, the Central Office Review Committee ("CORC").  Here, Plaintiff acknowledges in his Amended Complaint that administrative remedies were available at both institutions, and the record shows that he did in fact initiate a grievance.

Next, the Court determines whether the defendant forfeited the non-exhaustion affirmative defense by failing to appropriately raise or preserve it.  See Testman, 380 F.3d at 695. Defendants clearly have not forfeited the defense in this case.  It is the sole basis of their effort to obtain judgment in their favor.

Finally, the court looks to whether prison officials inhibited the inmate's ability to utilize grievance procedures and whether such actions "may estop one or more of the defendants

from raising" the defense. Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004). There is no evidence in the record indicating that DOCS officials in any way inhibited Plaintiff from properly filing a grievance or otherwise exhausting his administrative remedies. As Plaintiff proceeded with his grievance through two levels of the DOCS procedure there is nothing on the record to suggest that proper administrative remedies were not made available to Plaintiff. Indeed, the denial of the appeal from the Superintendent included a form explaining the final step of the procedure and how to advance the appeal to CORC. Nor has Plaintiff proffered any "special circumstances" justifying Plaintiff's failure to exhaust. See Hemphill, 380 F.3d at 686 (if plaintiff failed to exhaust administrative remedies, even though they were available, and if defendants have not forfeited the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements") (internal quotations and citations omitted).

In light of Plaintiff's failure to fully exhaust administrative remedies available to him prior to filing this Section 1983 claim, Defendants are entitled as a matter of law to summary judgment dismissing the Amended Complaint in its entirety.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. The Clerk of Court is respectfully requested to enter judgment dismissing the Amended Complaint and close this case. This Memorandum Opinion and Order resolves docket entry no. 14.

SO ORDERED.

Dated: New York, New York
    March 20, 2009

_____
LAURA TAYLOR SWAIN
United States District Judge

from raising" the defense. Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004). There is no evidence in the record indicating that DOCS officials in any way inhibited Plaintiff from properly filing a grievance or otherwise exhausting his administrative remedies. As Plaintiff proceeded with his grievance through two levels of the DOCS procedure there is nothing on the record to suggest that proper administrative remedies were not made available to Plaintiff. Indeed, the denial of the appeal from the Superintendent included a form explaining the final step of the procedure and how to advance the appeal to CORC. Nor has Plaintiff proffered any "special circumstances" justifying Plaintiff's failure to exhaust. See Hemphill, 380 F.3d at 686 (if plaintiff failed to exhaust administrative remedies, even though they were available, and if defendants have not forfeited the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements") (internal quotations and citations omitted).

In light of Plaintiff's failure to fully exhaust administrative remedies available to him prior to filing this Section 1983 claim, Defendants are entitled as a matter of law to summary judgment dismissing the Amended Complaint in its entirety.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. The Clerk of Court is respectfully requested to enter judgment dismissing the Amended Complaint and close this case. This Memorandum Opinion and Order resolves docket entry no. 14.

SO ORDERED.

Dated: New York, New York
March 20, 2009

LAURA TAYLOR SWAIN
United States District Judge